**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Ruben FUENTES–CARIAGA,**
**Defendant–Appellant.**

**No. 99–50222.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 8, 2000.

Filed April 17, 2000.

Joseph J. Burghardt, Federal Defenders of San Diego, Inc., San Diego, California, for the defendant-appellant.

George D. Hardy, Assistant United States Attorney, San Diego, California, for the plaintiff-appellee.

Before: RYMER and FISHER, Circuit Judges, and GEORGE, District Judge.*

RYMER, Circuit Judge:

Anticipating testimony by an Immigration and Naturalization Service inspector that Ruben Fuentes–Cariaga looked nervous when he was stopped at the border and that his nervousness was an important factor in referring him to secondary, Fuentes–Cariaga sought to present evidence by a non-percipient INS inspector that she would not infer consciousness of guilt from a driver's nervousness, as people crossing the border can be nervous because they see an authority figure—not because they are guilty. The district court refused to admit the proffered testimony, reasoning that it had nothing to do with the observation of Fuentes–Cariaga and that both parties could, in any event, argue the implications of his nervousness to the jury.

Fuentes–Cariaga challenges the court's ruling on due process and confrontation grounds following his conviction and sentence for importing marijuana and possessing marijuana with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1), 952, and 960. We affirm.

## I

Fuentes–Cariaga was driving a car from Mexico into the United States at the Calexico, California Port of Entry about 9:30 p.m. on August 5, 1998. At the primary inspection area, Inspector Jesse Ceron noticed that Fuentes–Cariaga was wearing a neck brace made of cardboard and gauze; he was trembling, his voice was shaky, and he could not maintain eye contact; and when asked about his neck, said he had been in an accident and also told the inspector that his cousin owned the car.

Ceron referred Fuentes–Cariaga to the secondary inspection lot. At secondary, United States Customs Inspector Merced Hernandez lifted the spare tire, shook it, and heard objects bouncing inside. Fuentes–Cariaga was then taken to the security office where a pat-down search revealed no weapons. Meanwhile, a narcotics detector dog alerted to the trunk area of the vehicle, where 39 packages of marijuana were found taped inside the spare tire, rear doors, rear seats, and rear seat rests. An air freshener was hanging from the rearview mirror. The packages had a net weight of almost 110 pounds, or 48.6 kilograms, and were worth about $100,000.

After being placed under arrest and advised of his *Miranda* rights, Fuentes–Cariaga told the Customs Special Agent that he had borrowed the car, owned by his cousin, Oscar Munoz, in Mexicali around 7:30 a.m. that morning to drive into the United States to buy diapers which his wife had requested the night before. He said he was going to a Wal–Mart in Calexico, California, although Mexicali has a Wal–Mart of its own. The vehicle Fuentes–Cariaga was driving was registered to Gabriel Serafin, not to his cousin.

At trial, Ceron testified that based on all his observations (including that Fuentes–Cariaga was nervous), he referred him to secondary for a possible customs violation. Hernandez testified that nervousness was an important factor in determining whether to send someone to secondary.

Fuentes–Cariaga subpoenaed INS Inspector Frances Carrillo and proffered the transcript of part of the testimony she had given in a previous, unrelated case. In that testimony, Carrillo stated that nervousness at the border does not indicate consciousness of guilt to her because people can be nervous for other reasons.[1]

---

* Honorable Lloyd D. George, Senior United States District Judge for the District of Nevada, sitting by designation.

1. Fuentes–Cariaga's proffer indicates that Carrillo had testified in the unrelated proceeding on direct that the defendant appeared nervous but admitted on cross that she did not note this fact in her written referral report. From the partial transcript provided, it appears that Carrillo then testified:

> Q It [that the defendant was nervous] was important enough to tell the jury this morning on direct, wasn't it?
> A Yes.

The district court quashed the subpoena and excluded the testimony.

Fuentes–Cariaga timely appeals his conviction.

## II

As presented by Fuentes–Cariaga, this appeal turns on whether excluding the opinion of a non-percipient INS inspector that she would not personally infer consciousness of guilt from a driver's nervousness at the border "significantly impaired" his ability to present a defense, thereby infringing his constitutional rights to due process and compulsory process.[2] *United States v. Scheffer*, 523 U.S. 303, 317, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998). However, the first question should be whether the district court abused its discretion in applying the Federal Rules of Evidence.

> Q But it wasn't important enough to write it on the referral slip on the day in question?
> A No, it was not important.
> Q Now, when you testified this morning that he was nervous, you wanted the jury to infer a consciousness of guilt by that, didn't you?
> A I just told them what I saw.
> Q Well, if you were working at the primary inspection yourself and you saw that someone was nervous, you personally would infer consciousness of guilt from [ ] nervousness, isn't that correct?
> A No.
> Q It's not correct?
> A There's a lot of people who cross the border everyday who are nervous. They have nothing to—they are not guilty. They are just nervous because they see an authority figure, and that's how they respond.

2. The parties dispute whether Carrillo's testimony was proffered as an expert or lay opinion, but neither the district court's decision nor our analysis depends on this distinction.

3. Where an expert offers general testimony about an issue within the ken of the jury's knowledge, it is not an abuse of discretion to exclude such testimony under Rule 702. *See United States v. Rahm*, 993 F.2d 1405, 1413 (9th Cir.1993) ("Our 'proper subject' inquiry has generally focused upon whether the expert testimony improperly addresses matters within the understanding of the average jury."); *Shore v. Cty. of Mohave*, 644 F.2d

We conclude that the district court did not abuse its discretion in excluding Carillo's testimony,[3] and certainly did not deprive Fuentes–Cariaga of his Sixth Amendment rights.

Fuentes–Cariaga argues that because the key issue at trial was whether he knew of the marijuana in the car he was driving, Carrillo's testimony that drivers can be nervous for a reason other than guilt was necessary to rebut testimony by Ceron and Hernandez that a driver's nervousness at the border is an important factor in determining whether a driver is intentionally importing contraband into the United States. In fact, Ceron and Hernandez did not testify that nervousness is an important factor in deciding whether a driver is intentionally importing contraband; what they testified to was that nervousness was a factor in determining *whether to refer a driver to secondary for further inspection.*[4]

1320, 1322 (9th Cir.1981) ("[E]xpert testimony in the form of an opinion is not needed when the trier of fact can understand the connection between the expert's testimony and the facts of the case.").

4. On direct examination, Inspector Ceron testified:

> Q As you were talking to the defendant on August 5th of 1998, did you notice anything unusual about his behavior?
> A He was nervous.
> Q And when you say "he was nervous," what exactly did you see him do?
> A His voice was shaky. He was trembling a bit. He gave furtive glances. He was looking north, towards the U.S., into the United States.
> \* \* \* \* \* \*
> Q And based on all of your observations on August 5th of 1988, what did you do?
> A I decided to refer him to U.S. Customs secondary for a possible customs violation.

On cross-examination, Inspector Hernandez testified:

> Q Now, whether someone is an owner of a vehicle or not that's an important fact for—in determining whether to send someone over to secondary?
> A No.
> Q But it is a factor?
> A It all depends on the demeanor of the person, if he is acting nervous.

Fuentes–Cariago did not object to this line of inquiry.

Nevertheless, we understand Fuentes–Cariaga's point to be that the jury could infer a link between nervousness and guilt from the fact that Ceron made the referral to secondary for further investigation of a possible customs violation in part because Fuentes–Cariaga appeared to be nervous. Thus, in Fuentes–Cariaga's view, Carrillo's opinion that nervousness does not always indicate guilt would have tended to make the key issue of Fuentes–Cariaga's knowledge of the drugs less probable than without it.

Fuentes–Cariaga relies heavily on *Washington v. Texas,* 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967), the seminal case holding that a defendant's Sixth Amendment right to obtain witnesses in his favor was abridged by a state statute providing that persons charged as principals, accomplices or accessories in the same crime cannot be introduced as witnesses for each other. There, the shotgun used for the murder of which Washington was accused had been brought to the scene by Charlie Fuller, who had previously been convicted for the same murder. Washington wanted Fuller to testify and the record indicated that had he been allowed to, Fuller would have stated that Washington tried to persuade him to leave and that he had run before Fuller fired the fatal shot. Thus, as the Court noted, it was undisputed that the proffered testimony was relevant, material and vital to Washington's defense because Fuller was the only person other than Washington who was percipient and knew exactly who pulled the trigger. As the state had arbitrarily denied the defendant the right to put on the stand a witness who had personally observed the events and whose testimony would have been relevant and material, the judgment of conviction could not stand. *Washington,* however, does not require reversal here. Unlike Fuller, Carrillo did not personally observe Fuentes–Cariaga nor was she involved in referring him to secondary. Also, her proffered testimony was not arbitrarily excluded; the district court saw no need for it as Carrillo would not be testifying to observations of

Fuentes–Cariaga and the parties could argue the implications of being nervous to the jury.

*Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), upon which Fuentes–Cariaga also relies, is no more dispositive. In *Chambers,* the defendant sought to show that Gable McDonald, not he, had shot the police officer for whose murder he was on trial. Chambers asked the court to order McDonald to appear, and he tried to introduce the testimony of three witnesses to whom McDonald had admitted that he shot the officer. The trial court refused both requests on account of state procedural rules. Observing that Chambers's defense was "far less persuasive" than it might have been had he been given an opportunity to call McDonald and admit testimony from other sources about McDonald's confessions, *id.* at 294, 93 S.Ct. 1038, the Court held that exclusion of this testimony that was critical to Chambers's defense denied him a fair trial guaranteed by due process. Although Fuentes–Cariaga contends that his situation is similar because he was denied the right to present a witness to testify regarding the same issue to which the government was permitted to present two witnesses, we disagree that this is what happened or that the effect of precluding Carrillo from testifying made Fuentes–Cariaga's defense "far less persuasive." Carrillo was not a percipient witness; she could not have rebutted Ceron's testimony that Fuentes–Cariaga was in fact nervous. Nor would Carrillo have rebutted the testimony of Ceron and Hernandez that nervousness is an important factor in deciding whether to refer a driver to secondary (indeed, Carrillo apparently relied on the defendant's nervousness in the case in which she testified), or was an important factor in Ceron's decision to refer Fuentes–Cariaga. That Carrillo herself would not infer consciousness of guilt from a driver's nervousness would not have countered anything said by Inspectors Ceron and Hernandez, for neither offered an opinion on whether consciousness of

guilt could be inferred from the fact that Fuentes–Cariaga was nervous. At most, Carrillo's opinion that a lot of people who are nervous crossing the border are not guilty would have given Fuentes–Cariaga's counsel a peg in the record from which to argue that the jury should *not* infer that Fuentes–Cariaga knew about the marijuana because he was nervous. However, the government had nothing in the record to point to for its argument that Fuentes–Cariaga's nervousness showed that he *did* know about the drugs. This is something within the ordinary experience of jurors: drivers stopped at the border (or anywhere else) can be nervous for many reasons, one being a natural unease when confronted by an authority figure and another being fear of getting caught with contraband the person knows he is carrying. It is also within the ordinary province of jurors to draw inferences from an undisputed fact such as nervousness, which in any event was but one of several items of circumstantial evidence pointing to Fuentes–Cariaga's guilt. This makes the proffered testimony here quite different from that in *Chambers* where, if the proffered evidence were believed, the defendant would necessarily have been exonerated.

Fuentes–Cariaga further points to *Pettijohn v. Hall*, 599 F.2d 476, 481 (1st Cir. 1979), for the proposition that "[i]f the Supreme Court cases of *Washington v. Texas* [ ] and *Chambers v. Mississippi* ... mean anything, it is that a judge cannot keep important yet possibly unreliable evidence from the jury." There, too, the excluded witness was an eyewitness to the crime. The central issue in Pettijohn's trial was identification, and the proffered testimony would have arguably shown that someone other than the defendant was the armed robber. In that context the court held that the evidence was both probative and critical to the defendant's guilt. In this case Carrillo was not excluded because her testimony was relevant but unreliable, rather because it lacked probative value and was unnecessary.

In sum, the right to present a defense is fundamental, but exclusion of evidence reached constitutional proportions in *Washington* and *Chambers* only because it "significantly undermined fundamental elements of the accused's defense." *Scheffer*, 523 U.S. at 315, 118 S.Ct. 1261. The district court's decision to exclude a non-percipient witness's personal opinion that she would not infer guilt from nervousness did not impermissibly infringe upon Fuentes–Cariaga's right to present a defense: Fuentes–Cariaga's counsel was free to cross-examine Ceron and Hernandez about what they did and why, and to argue (as he did) that it is unreasonable to infer that Fuentes–Cariaga knew about the marijuana from the fact that he was nervous. Thus, the exclusion of Inspector Carillo's testimony did not infringe upon a weighty interest of the accused, and was not unconstitutional. *Id.* at 308, 118 S.Ct. 1261.

Should we conclude that the district court did not commit constitutional error, Fuentes–Cariaga alternatively argues that exclusion of the evidence was not harmless. This argument is not developed enough to address, but in any event as we have explained, Fuentes–Cariaga's nervousness was itself undisputed and in light of the improbable and untrue stories that he told, Carrillo's non-percipient opinion about what nervousness alone signifies would not have impacted the verdict.

Accordingly, we conclude that exclusion of proffered testimony by an INS inspector in an unrelated case that she does not believe all nervous people who cross the border are "guilty" but are "just nervous because they see an authority figure, and that's how they respond" did not violate Fuentes–Cariaga's rights to due process or to present a defense.

AFFIRMED.