JOURNAL ENTRY AND OPINION
Curtis Williams appeals from a judgment of conviction entered pursuant to a jury verdict finding him guilty of felonious assault with a peace officer specification. On appeal, Williams argues that the trial court violated his constitutional right to present witnesses in his defense when it excluded the testimony of his mother; he complains of prosecutorial misconduct during closing argument; he challenges the admission of hearsay testimony; and he raises an ineffective assistance of counsel challenge to his conviction. He further challenges the imposition of sentence, urging that the court should have imposed a minimum term and maintaining that the court inappropriately sentenced him based on prior uncharged acts and acquittals.
After review of the record, we conclude that Williams' challenges to his conviction and sentence are without merit and, therefore, affirm the judgment of the trial court.
The record before us reveals that on August 19, 2000, around 5:00 a.m., Patrolman Dwayne Duke of the Cleveland Police Department and his partner, Patrolman Richard Tusing, responded to a domestic violence call at 17301 Lotus Drive, in the City of Cleveland, Ohio.
The officers arrived at the scene and, after speaking briefly with the residents of that house, Williams' mother and stepfather, they were directed to the garage.
As they approached the garage, a male yelled, "Who is out there?" According to both Officers Duke and Tusing, the male sounded agitated. After Duke and Tusing identified themselves as police officers, the garage door flew open and the male, Williams, came out wielding a baseball bat.
Williams turned towards Officer Duke, who took a step back and drew his weapon. Duke and Tusing again identified themselves as police officers and ordered Williams to put down the bat. According to Tusing, Williams held the bat in "swinging stance" and took at least one swing at Officer Duke.
Officer Tusing radioed for assistance, and within five minutes, Officers Michael Dunst and John Cubas arrived at the scene. In the meantime, Officers Duke and Tusing had backed Williams into the garage and convinced him to put the bat down; in return, they holstered their weapons.
However, Williams refused to step away from the bat, and the stand-off continued until Officer Duke, who kept inching closer to Williams, got close enough to grab him. After a brief struggle, the other officers managed to subdue and handcuff Williams. According to Williams, the police repeatedly beat him during his arrest.
After placing Williams in the back of their police car, Officers Duke and Tusing transported him to the police station for booking. Officer Duke began to fill out the booking forms, and because Williams had remained calm and cooperative during his transport and booking, Officer Cubas started remove his handcuffs. As soon as hands were free, Williams punched Officer Duke in the nose.
EMS transported Duke to St. Vincent Charity Hospital where Dr. Berta Briones ordered X-rays, which revealed that Officer Duke suffered a broken nasal bone and an almost completely bowed septum.
On September 28, 2000, a grand jury issued an indictment charging Williams with one count of felonious assault with a peace officer specification.
The jury trial of this case commenced on December 18, 2000, with the state presenting testimony from Dr. Briones and Officers Duke, Tusing, Dunst, and Cubas. Williams testified in his own defense and admitted punching Officer Duke. Although he alleged that the police officers repeatedly beat him during his arrest, he acknowledged that no one had touched him during his transport or booking.
After deliberation, the jury rendered a verdict finding Williams guilty of felonious assault and guilty of the peace officer specification, making the offense a felony of the first degree. The court conducted a sentencing hearing on January 11, 2001, and then sentenced Williams to a prison term of nine years.
Williams now appeals, raising six assignments of error for our review. The first states:
 THE TRIAL COURT DENIED MR. WILLIAMS HIS CONSTITUTIONAL RIGHTS GUARANTEED BY ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION AND THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION WHEN THE TRIAL COURT DID NOT ALLOW A MATERIAL WITNESS TO TESTIFY FOR THE DEFENSE.
Williams contends that the court erred when it excluded the testimony of his mother. He maintains that her testimony is essential to his defense that the police, by repeatedly beating him during his arrest, seriously provoked him into punching Officer Duke in the nose at the booking counter.
The state asserts that the mother's testimony is not material or relevant to Williams' defense, pointing out that Williams remained calm and cooperative during his transport, alleging only that he was assaulted during his arrest but not during his subsequent transport or booking, and that Williams therefore did not assault Officer Duke while under the influence of sudden passion or a sudden fit of rage.
The Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution protect the right of a criminal defendant to offer the testimony of witnesses. Washington v. Texas
(1967), 388 U.S. 14, 18, 18 L.Ed.2d 1019, 87 S.Ct. 1920.
This right is a fundamental element of due process of law; however, it is not without limits. Washington, 388 U.S. at 19-21. This right has only been applied to "testimony [that] would have been relevant and material, and * * * vital to the defense." United States v. Valenzuela-Bernal
(1982), 458 U.S. 858, 102 S.Ct. 3440, 73 L.Ed.2d 1193, quotingWashington, 388 U.S. at 16. Accord United States v. Fuentes-Cariaga
(C.A.9, 2000), 209 F.3d 1140, 1143 (the right to present a defense is fundamental, but exclusion of evidence only reaches constitutional proportions if it significantly undermines the fundamental elements of the accused's defense); United States v. Begay (10th Cir. 1991), 937 F.2d 515,523 (the Constitution only requires that a criminal defendant be given the opportunity to present evidence that is relevant, material and favorable to his defense).
Here, the defense requested the opportunity to present the testimony of Brenda Williams, and it made the following proffer of her testimony at Tr. 234-235:
 MR. CONDOSTO: Thank you, your Honor. Yes, I would call an additional witness, that being Brenda Williams who is in the courtroom today. Ms. Williams is the mother of my client. And there would [sic] testimony, she would testify to the fact that my client did not threaten anybody with a baseball bat. That this was not the crust [sic] of any type of domestic violence call. That there was a rapping on the window, and they were concerned over that. This is what led up to the police showing up. The state has been trying to show that my client was violent at that time, or in an agitated state. My client was merely scared. She will testify to the fact that he was frightened. That she saw him very frightened.
 She will also testify to the fact that she heard my client being struck and crying out in pain, and saying, don't hit me, along those lines. She will also testify to the fact, that she received prescriptions at home for my client, dated August 19th, which was the date that this arrest took place. And also she received a statement from St. Vincent Charity Hospital addressed to her, because that's where my client was living. That my client, did in fact, receive hospital care, and she was [sic] had knowledge of this. That he was injured enough to receive hospital care.
 This is what I would have presented, and what Ms. Williams would have presented, had she had the opportunity to testify. Thank you, your Honor.
On appeal, Williams urges that his mother's testimony is relevant and material to his claim of "serious provocation," which could have warranted a conviction of a lesser offense of aggravated assault.
R.C. 2903.12 defines aggravated assault as follows:
 (A) No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly:
(1) Cause serious physical harm to an other;
"[I]n a trial for felonious assault, where the defendant presents sufficient evidence of serious provocation, an instruction on aggravated assault must be given to the jury." State v. Deem (1988),40 Ohio St.3d 205, 533 N.E.2d 294, paragraph four of the syllabus. As the court explained in paragraph five of the syllabus in Deem:
 Provocation, to be serious, must be reasonably sufficient to bring on extreme stress and the provocation must be reasonably sufficient to incite or to arouse the defendant into using deadly force. In determining whether the provocation was reasonably sufficient to incite the defendant into using deadly force, the court must consider the emotional and mental state of the defendant and the conditions and circumstances that surrounded him at the time.
As the court stated in State v. Mack (1988), 82 Ohio St.3d 198,201, 694 N.E.2d 1328:
 * * * [P]ast incidents or verbal threats do not satisfy the test for reasonably sufficient provocation when there is sufficient time for cooling off. State v. Huertas (1990), 51 Ohio St.3d 22, 31-32, 553 N.E.2d 1058, 1068-1069. See, also, State v. Pierce (1980), 64 Ohio St.2d 281, 18 Ohio Op. 3d 466, 414 N.E.2d 1038.
Here, despite the proffered testimony of his mother, which purportedly corroborated his own testimony that the police beat him during his arrest, Williams admitted on the stand that no one struck him after he had been placed in the back of the squad car. The evidence therefore demonstrates that he remained calm and cooperative during his transport and booking, until Officer Cubas removed the handcuffs. Thus, Williams had sufficient time for his passions to cool, and, therefore, even if the court permitted his mother to testify, he still would not have been able to establish that he acted out of serious provocation; moreover, had he been able to establish that he did act out of serious provocation, he would only have requested the court to charge the jury on the lesser offense of aggravated assault. He could have requested that instruction based on his own testimony but chose not to do so. Hence, at best, his mother's testimony would only corroborate his own — not add any new evidence of serious provocation — in an effort to bolster his own testimony upon which he did not even seek a charge on the lesser offense.
Accordingly, the proffer of Brenda Williams' testimony, which is limited to the time of her son's arrest, is not relevant because it could not have established serious provocation at the police station at least fifteen minutes after his arrest. Further, her testimony would have merely been duplicative of that of her son. Based on the foregoing, the exclusion of her testimony did not deny Williams the opportunity to present evidence that he acted out of sufficient provocation justifying a charge on aggravated assault. Therefore, the court did not commit reversible error in excluding it. Accordingly, this assignment of error is overruled.
 II. THE PROSECUTION VIOLATED MR. WILLIAMS' CONSTITUTIONAL RIGHTS UNDER ARTICLE I, SECTION 10
OF THE OHIO CONSTITUTION AND THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION WHEN IT ENGAGED IN IMPROPER CLOSING ARGUMENT THAT WAS DESIGNED TO APPEAL TO THE PASSION AND PREJUDICES OF THE JURY AND THAT URGED THE JURY TO DRAW CONCLUSIONS NOT BASED ON THE EVIDENCE PRESENTED AT TRIAL.
Williams next argues that comments made by the prosecutor during closing argument constituted prosecutorial misconduct. In particular, he complains that the prosecutor referred to the high profile murder of a Cleveland police officer and also suggested, without evidence, that Williams may have been under the influence of drugs when the underlying incident occurred.
The state contends that these comments were appropriate and points out that Williams failed to object to its closing arguments during trial and therefore has waived this issue on appeal.
In State v. Lott (1990), 51 Ohio St.3d 160, 555 N.E.2d 293, the court set forth the following two-part test for prosecutorial misconduct at page 165:
 The test for prosecutorial misconduct is whether remarks are improper and, if so, whether they prejudicially affected substantial rights of the accused. [Citations omitted.]
A prosecutor should be afforded certain latitude and freedom of expression during closing argument. State v. Apanovitch (1987),33 Ohio St.3d 19, 514 N.E.2d 394.
During his closing argument, the prosecutor referred to the recent murder of Officer Wayne Leon, which had no connection to Williams or the charges against him. At Tr. 248-249, the prosecutor states:
 You know, last night when I was thinking of this case, and trying you know, thinking about what these police officers have to go through. I thought about Officer Wayne Leon. He was a police officer in Cleveland that was murdered. And the only similarity I'm going to bring to you there, and in that case, Officer Leon was radioing in the defendant's license place. He was looking down, radioing in, and he suspected nothing. And he was shot and killed. This defendant, Officer Duke is sitting there writing out the booking form. What does he do, not even expecting it? He comes and clocks him right in the nose, because of irresponsible people.
At Tr. 260, the prosecutor implied that Williams may have been under the influence of drugs when he punched Officer Duke. This comment transcends the evidence in the case, and because the state failed to present any evidence that Williams may have been under the influence of drugs, it "improperly invites the jury to speculate on facts not in evidence." See State v. Hartman (2001), 93 Ohio St.3d 274, 294,754 N.E.2d 1150, quoting State v. Wogenstahl (1996), 75 Ohio St.3d 344,357, 662 N.E.2d 311, citing State v. Combs (1991), 62 Ohio St.3d 278,283, 581 N.E.2d 1071.
Having established these as improper remarks, we recognize that, to constitute reversible error, these comments must also prejudicially affect substantial rights of the accused. Further, because Williams failed to object during the state's closing argument, he waived all but plain error in this regard. Hartman, supra, 93 Ohio St.3d at 294, citingState v. Wade (1978), 53 Ohio St.2d 182, 7 O.O.3d 362, 373 N.E.2d 1244, paragraph one of the syllabus. "Plain error does not exist unless, but for the error, the outcome at trial would have been different." State v.Jones (2001), 91 Ohio St.3d 335, 343, 744 N.E.2d 1163, quoting State v.Joseph (1995), 73 Ohio St.3d 450, 455, 653 N.E.2d 285.
Here, a review of the evidence reveals that three police officers testified that Williams struck Officer Duke at the police station booking window. Williams admitted as much as well. His position is that he acted under serious provocation, but we have already rejected that claim. There is no suggestion that, but for the improper prosecutorial comments in final argument, Williams would not have been convicted. Hence, we reject this argument as constituting plain error.
Accordingly, we have concluded that, although the prosecutor's closing argument contained improper comments, Williams failed to establish they prejudicially affected his substantial rights as required by Lott, supra. Therefore, we reject this assignment of error.
 III. THE TRIAL COURT ERRED WHEN IT PERMITTED OFFICER DUKE TO TESTIFY AS TO WHAT AN UNNAMED DOCTOR TOLD HIM REGARDING THE POSSIBLE NEED FOR FUTURE NASAL SURGERY.
Williams also challenges the admission of testimony from Officer Duke that the emergency room physician, Dr. Briones, and another doctor told him he may need surgery to repair his fractured nasal bone. (Tr. 150-151.) Williams maintains that this is hearsay testimony and that it does not fall under the medical diagnosis exception listed in Evid.R. 803(4). Further, Williams urges this testimony prejudiced the jury's determination that Officer Duke suffered "serious physical harm".
The state argues that the admission of this testimony is not prejudicial in light of Dr. Briones' testimony about the seriousness of Officer Duke's injuries and his recommendation of surgery to repair the broken nasal bone. (Tr. 111-113.)
Evid.R. 801(C) defines hearsay as follows:
 "Hearsay" is a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted.
Evid.R. 802, the hearsay rule, provides:
 Hearsay is not admissible except as otherwise provided by the Constitution of the United States, by the Constitution of the State of Ohio, by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio, by these rules, or by other rules prescribed by the Supreme Court of Ohio.
Hearsay is not admissible unless it falls within one of the recognized exceptions. A review of Evid.R. 803 reveals that none of those exceptions, including the medical diagnosis exception in Evid.R. 803(4), applies to the challenged testimony. As Williams points out, the circumstantial guaranty of trustworthiness of this exception applies only to statements made to a physician by a patient and does not necessarily apply to statements made by a physician to a patient. See Staff Notes, Evid.R. 803(4). See, also, Holt v. Olmsted Twp. Bd. of Trustees
(N.D.Ohio. 1998), 43 F. Supp.2d 812, 819, citing Portis v. Grand TrunkWestern Railroad Co. (July 12, 1994), C.A.6 No. 93-1721, unreported.
However, as stated by the court in State v. Maurer (1984),15 Ohio St.3d 239, 265, 473 N.E.2d 768:
 "The trial court has broad discretion in the admission * * * of evidence and unless it has clearly abused its discretion and the defendant has been materially prejudiced thereby, this court should be slow to interfere." State v. Hymore (1967), 9 Ohio St.2d 122, 128 [38 O.O.2d 298].
Here, the admission of the challenged hearsay evidence did not materially prejudice Williams; instead, it is duplicative of the testimony of Dr. Briones, who had earlier testified that he would recommend Officer Duke undergo surgery to repair his injuries. (Tr. 113.) Further, the jury could have easily found serious physical harm absent the possibility of surgery based on Dr. Briones' description of the long-term consequences of Officer Duke's injuries at Tr. 111:
 Q. All right. Are there any long term consequences to having this type of an injury?
A. Yes.
 Q. Explain to the jury what the long term consequences of this type of injury are?
 A. Chronic sinusitis, sleep apnea, snoring, excessive sleepiness, fatigue and chronic headaches.
Q. Sleep apnea?
 A. Yes. That is a condition in which when people sleep, they stop breathing, and this causes a number of complications from stroke, heart attacks and hypertension.
R.C. 2901.01(A)(1) defines serious physical harm as follows:
 (5) Serious physical harm to persons means any of the following:
 (a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
 (b) Any physical harm that carries a substantial risk of death;
 (c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
 (d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;
 (e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.
Based on Dr. Briones' testimony, the jury could have concluded that Officer Duke sustained "serious physical harm" regardless of whether or not he may need surgery in the future. Therefore, we have concluded that the court did not commit reversible error by admitting the challenged hearsay testimony, and we reject this assignment of error.
 IV. THE TRIAL COURT ERRED WHEN IT IMPOSED MORE THAN THE MINIMUM TERM OF IMPRISONMENT UPON MR. WILLIAMS WITHOUT MAKING THE REQUISITE FINDINGS PURSUANT TO R.C. 2929.14(B).
Williams challenges the nine-year sentence imposed by the trial court, noting the statutory presumption in favor of a minimum sentence and asserting that the court failed to make the requisite findings under R.C. 2929.14(B). He requests that we vacate his sentence and impose the minimum three-year sentence pursuant to R.C. 2953.08(G). The state counters that the trial court properly considered the R.C. 2929.14(B) factors and that the court justified its nine-year sentence.
R.C. 2929.14(B) states:
 (B) Except as provided in division (C), (D)(1), (D)(2), (D)(3), or (G) of this section, in section 2907.02
of the Revised Code, or in Chapter 2925. of the Revised Code, if the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender and if the offender previously has not served a prison term, the court shall impose the shortest prison term authorized for the offense pursuant to division (A) of this section, unless the court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others.
In State v. Edmonson (1999), 86 Ohio St.3d 324, 326, the court considered R.C. 2929.14(B) and stated:
 We construe this statute to mean that unless a court imposes the shortest term authorized on a felony offender who has never served a prison term, the record of the sentencing hearing must reflect that the court found that either or both of the two statutorily sanctioned reasons for exceeding the minimum term warranted the longer sentence.
The sentencing court need not use the exact language of the statute, as long as it is clear from the record that the court made the required findings. See State v. Hollander (July 5, 2001), Cuyahoga App. No. 78334, unreported, citing State v. Futrell (Nov. 10, 1999), Cuyahoga App. Nos. 75033, 75034, 75035, unreported; State v. Assad (June 11, 1998), Cuyahoga App. No. 72648, unreported.
Here, a review of the transcript of the sentencing hearing reveals that the court stated:
 * * * Accordingly for the protection of the public as well as the defendant's own protection, an almost maximum sentence is required here. (Tr. 314.)
Although the trial court did not use the exact language of R.C.2929.14(B), this pronouncement clearly demonstrates the court found the second statutorily sanctioned reason for exceeding the minimum term,i.e., that the minimum three-year term would not have adequately protected the public from future crime by the offender or others.
Williams also complains that the court recited the factors for imposing a maximum sentence at Tr. 315[1] and urges that, because the court did not impose the maximum ten-year term, this "indicates that the trial judge did not understand the Revised Code's sentencing provisions * * *." Subsections (B) and (C) of R.C. 2929.14 are mutually exclusive, see Statev. Berry (June 14, 2001), Cuyahoga App. No. 78187, unreported; therefore, a sentencing court need not make maximum findings before imposing greater than the minimum sentence.
Here, the sentencing court did not abuse its discretion in considering the sentencing factors listed in subsection (C), but such consideration is unnecessary when the court imposes less than a maximum sentence. Accordingly, this assignment of error is rejected.
 V. THE TRIAL COURT IMPROPERLY CONSIDERED UNCHARGED ACTS AND A PRIOR ACQUITTAL AS AGGRAVATING FACTORS AT SENTENCING.
Williams further asserts that the trial court abused its discretion in basing its pronouncement of sentence on prior uncharged or unproven crimes allegedly committed by him. The state does not directly challenge this assertion.
Our court has consistently held that "it is error for a trial judge to base a sentence upon a crime neither charged nor proven." State v. Russo
(May 31, 2001), Cuyahoga App. No. 78096, unreported, citing State v.Gipson (May 20, 1999), Cuyahoga App. No. 75369, unreported, citing Statev. Longo (1982), 4 Ohio App.3d 136, 446 N.E.2d 1145; Columbus v. Jones
(1987), 39 Ohio App.3d 87, 529 N.E.2d 947; State v. Jeffers (1978),57 Ohio App.2d 107, 385 N.E.2d 641; State v. Patterson (1996),110 Ohio App.3d 264, 673 N.E.2d 1001.
Here, the trial court emphasized several previous allegations against Williams which resulted in either acquittals or no charges being filed. At Tr. 312-314, the court stated:
 Now again this Court carefully reviewed everything in the file, and I think there was something very interesting here. Let's take a look at your record. `96 no driver's license, found guilty. 3/28/99 Warrensville Heights, and I don't know if these are two case numbers. Assault on a police officer, police officer specification, aggravated robbery with a police officer specification. These are two, 377610 and 384831. You went to trial and were found not guilty but remember here assault on a police officer, aggravated robbery, then this case 8/19, felonious assault with peace officer specification.
 Now before this trial[,] this Court ordered that the defendant be referred to the Court Psychiatric Clinic for a competency report. In February of `99 you were arrested in Warrensville Heights for a DUI. Immediately following the DUI you were involved in a fight with police and removed the officer's weapon. You were found not guilty but I think you were hospitalized at Meridian Huron Road Hospital on 2/28.
* * *
 I see the night in question and because of the fact I believe there was another time when you actually did hit your stepfather and he had to be taken to the hospital — well, I can't find it but I do believe that prior to this event you had gotten in an altercation with your stepfather where he received three stitches to the head and that's why you were told you could not live in the house but were permitted to live in the garage, and on the night in question your family fearful of your violent behavior called the police.
* * *
 I don't know. I think what I have said indicates a very compelling conclusion that this defendant is a person who is violent, has been violent and will continue to be violent towards his family, towards the police and expresses absolutely positively no remorse. Accordingly for the protection of the public as well as the defendant's own protection, an almost maximum sentence is required here.
In reviewing his criminal history, the Court referenced matters on which Williams had been found not guilty; it also referenced an incident involving his stepfather which did not result in a criminal charge.
While the Court concluded the appellant to be a violent person, it did not use the unindicted act or not guilty verdict as the sole basis for its sentence. Accordingly, we overrule this assignment of error.
 VI. THE APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10, OF THE OHIO CONSTITUTION.
In his final assignment of error, Williams questions the effective assistance of counsel because his trial counsel failed to convince the trial court to allow his mother to testify, failed to request a charge on aggravated assault, and failed to object to comments made by the prosecutor during closing argument.
To prevail on a claim of ineffective assistance of counsel, a defendant must satisfy the two-part test set forth in Strickland v. Washington
(1984), 466 U.S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052: the defendant must first show that counsel's performance was deficient; next, to warrant reversal, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.
The defendant bears the burden of proving ineffectiveness of counsel.State v. McNeill (1998), 83 Ohio St.3d 438, 451, 700 N.E.2d 596. The defendant cannot meet this burden by making bare allegations that find no support in the record. State v. Leek (July 29, 1999), Cuyahoga App. No. 74338, unreported, citing State v. Stewart (Nov. 19, 1998), Cuyahoga App. No. 73255, unreported, citing State v. Smith (1985), 17 Ohio St.3d 98,477 N.E.2d 1128.
Williams first claims his "trial counsel could have explained to the trial court that Ms. Williams' testimony was material to the inferior offense of aggravated assault." He also urges that counsel should have requested an instruction on aggravated assault. However, we have already rejected this contention in our analysis of Williams' first assignment of error and concluded that, with or without his mother's testimony, the record would not support the claim of "serious provocation" because Williams had a sufficient time to cool off prior to assaulting Officer Duke. As such, we are unable to say counsel's performance is deficient in this regard.
Williams also faults his counsel's failure to object to the state's closing argument. We have previously concluded that the prosecutor made improper comments during closing argument. We agree, therefore, that defense counsel should have objected to these remarks.
However, based on the overwhelming evidence against Williams, including his own admission of guilt, we are unable to make the determination that, but for his counsel's failure to object during the state's closing argument, he would not have been convicted of felonious assault. As such, we overrule this assignment of error and affirm Williams' conviction for felonious assault with a peace officer specification. Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANN DYKE, A.J. and COLLEEN CONWAY COONEY, J., CONCUR.
[1] Specifically, the court stated, "In order to clarify the record, the defendant, Curtis Williams, has committed the worst form of the offense and poses, based on information we have placed upon the record, poses the greatest likelihood of recidivism."