THE STATE OF OHIO, APPELLEE, *v.* PIERCE, APPELLANT.

(No. 80-418—Decided December 30, 1980.)

Mr. James R. Unger, prosecuting attorney, and Mr. Dale T. Evans, for appellee.

Mr. J. Whitney Ake, for appellant.

Per Curiam.

I.

In proposition of law number three, defendant-appellant argues that the trial court's instruction on voluntary manslaughter was prejudicial because it included inadequate definitions of both extreme emotional distress and serious provocation.

The Court of Appeals found it unnecessary to consider this argument, ruling that defendant was not entitled to an instruction on voluntary manslaughter. We agree.

R. C. 2903.03, in part, provides:

"(A) No person, while under extreme emotional stress brought on by serious provocation reasonably sufficient to incite him into using deadly force, shall knowingly cause the death of another."

State v. Muscatello (1978), 55 Ohio St. 2d 201, paragraph four of the syllabus, provides that in a prosecution for aggravated murder, an instruction on the lesser-included offense of voluntary manslaughter must be submitted to the jury if "the defendant produces or elicits some evidence on the mitigating circumstance of extreme emotional stress described in R. C. 2903.03." State v. Muscatello, supra, paragraph five of the syllabus, however, defines an act committed under extreme emotional stress as "one performed under the influence of sudden passion or in the heat of blood

without time and opportunity for reflection or for passions to cool."

Further, under Ohio law, the lesser-included offense of voluntary manslaughter does not embrace "a deliberate, calculated homicide [merely]\*\*\*because extreme emotional stress brought on by the requisite provocation caused the laying of plans for the killing, as well as the killing itself\*\*\*." "It is upon just such fact-patterns that defendants enjoy the opportunity of obtaining relief by means other than a resort to deadly force." *Id.,* at page 205.

Defendant introduced evidence of his emotional stress which he alleged was caused by the breakdown of his marriage; his contact with his wife, LaPorte and others during the six weeks preceding the killing; and a number of idiosyncratic personality traits. Further, defendant introduced evidence of his telephone conversations on the night before the killing, December 22, 1976, with his wife, some of his wife's relatives and friends, and LaPorte, in which a fight between defendant and LaPorte, which never materialized, was discussed.

Even assuming that these telephone conversations on the night before the killing could constitute requisite provocation, defendant was not entitled to an instruction on voluntary manslaughter. Given the period of time which elapsed between these telephone conversations and the killing on the next morning (during which there is no evidence of provocation), such killing was not, as a matter of law, committed under extreme emotional stress, since no finder of fact could possibly conclude that the killing was "performed under the influence of sudden passion or in the heat of blood, *without time and opportunity for reflection or for passions to cool." State v. Muscatello, supra,* paragraph five of the syllabus. (Emphasis added.) Therefore, we conclude that defendant was not entitled to an instruction on voluntary manslaughter.

## II.

Defendant-appellant, in his first proposition of law, pursuant to the Fourth and Fourteenth Amendments to the United States Constitution,[1] challenges the trial court's deci-

---

[1] Appellant also refers to Section 14, Article I of the Ohio Constitution, which, by its terms, is identical to the Fourth Amendment to the United States Constitution.

sion to admit in evidence (1) defendant's handwritten last will and testament, dated December 18, 1976 (five days before the killing); (2) an empty Winchester 30-30 rifle box; and (3) a Firearms Transaction Record in defendant's name for a Winchester 30-30 rifle dated December 19, 1976 (four days before the killing).[2] Appellant asserts that these items were discovered as the result of a police search without a warrant of defendant's rented residence at approximately 5:00 p.m. on December 23, 1976, the day defendant killed LaPorte.

The Court of Appeals ruled that the above search was valid, and thus sustained the trial court's decision to admit the evidence. We do not pass upon the validity of the search because we conclude that even if the trial court did err in admitting this evidence, such error (if any) is harmless beyond a reasonable doubt.

*Chapman* v. *California* (1967), 386 U. S. 18, 22, 24, provides that federal constitutional error in a state criminal case does not require reversal where such error is harmless beyond a reasonable doubt. Such a standard, of course, assures that appellate courts, in determining the prejudicial effect of erroneously admitted evidence, will require the same high degree of certainty in criminal cases as must the trier of fact. See Saltzburg, The Harm of Harmless Error, 59 Va. L. Rev. 988, 989, 1021-1022, 1030-1031 (1973). Nevertheless, numerous appellate courts have determined that an erroneous admission of evidence obtained in violation of the Fourth Amendment is harmless when the circumstances of a particular case warrant such a finding. See cases collected at 30 A.L.R. 3d 128.

In oral argument to this court, appellant asserted that the admission of the allegedly tainted evidence prejudiced his opportunity to avoid a conviction for aggravated murder and thus obtain a conviction for either murder or voluntary manslaughter, *i.e.*, a lesser-included offense. For reasons set forth, we disagree.

We first consider whether the admission of the allegedly tainted evidence prejudiced defendant's opportunity to obtain

---

[2] Appellant asserts that the Firearms Transaction Record was discovered through a police follow-up on a sales slip, which defendant asserts was also seized during the warrantless search. See *Wong Sun* v. *United States* (1963), 371 U. S. 471.

a conviction for murder. In convicting defendant for aggravated murder under R. C. 2903.01,[3] the jury necessarily found that defendant killed LaPorte "purposely, and with prior calculation and design***." If the jury had convicted defendant for the lesser-included offense of murder under R. C. 2903.02[4] it would have been required to find that defendant killed LaPorte purposely but *without* prior calculation and design.

The admission of the allegedly tainted evidence, therefore, could not have prejudiced defendant's opportunity to obtain a conviction for the lesser-included offense of murder if, absent this evidence, it is beyond a reasonable doubt that the jury would still have found that defendant killed LaPorte with prior calculation and design.

Prior calculation and design is not defined in the Revised Code. However, in *State* v. *Cotton* (1978), 56 Ohio St. 2d 8, paragraphs two and three of the syllabus provide:

"Instantaneous deliberation is not sufficient to constitute 'prior calculation and design.'

"Where evidence adduced at trial reveals the presence of sufficient time and opportunity for the planning of an act of homicide to constitute prior calculation, and the circumstances surrounding the homicide show a scheme designed to implement the calculated decision to kill, a finding by the trier of fact of prior calculation and design is justified."

See, also, *State* v. *Robbins* (1979), 58 Ohio St. 2d 74, 77-79, and paragraph one of the syllabus.

In accordance with *State* v. *Cotton, supra,* the trial court properly instructed the jury as follows:

"***Prior calculation and design means that the purpose to kill was reached by a definite process of reasoning in advance of the killing which process of reasoning must have included a mental plan involving studied consideration of the method and the means or instrument with which to kill another.

---

[3] R. C. 2903.01, in part, provides:

"(A) No person shall purposely, and with prior calculation and design, cause the death of another."

[4] R. C. 2903.02, in part, provides:

"(A) No person shall purposely cause the death of another."

"No definite period of time must elapse and no particular amount of consideration must be given to the prior calculation and design to kill. Acting on the spur of the moment or after momentary consideration of the purpose to kill is not sufficient to constitute the kind of prior calculation and design required for aggravated murder. However neither the degree of care nor the length of time the offender takes to ponder the crime beforehand are critical factors in themselves, but they must amount to more than momentary deliberation."

Defendant-appellant's position apparently is that the challenged evidence could not have been harmless because the date recorded on his last will and testament, December 18, 1976, *i.e.*, five days before the killing; and the date recorded on the Firearms Transaction Record, December 19, 1976, *i.e.*, four days before the killing, reveal a temporal sequence which prejudiced his ability to negate a finding of prior calculation and design. (The admissibility of the empty Winchester 30-30 rifle box itself is not prejudicial since there is no doubt defendant killed LaPorte.)

The evidence before the jury, however, was that at 6:00 a.m. on the morning of the killing, defendant, without any immediate provocation, visited the restaurant where LaPorte worked and determined from LaPorte's brother that LaPorte was still at home preparing to come to work. Defendant thereupon drove to LaPorte's home, where at approximately 6:30 a.m., he repeatedly fired a long-barreled automatic weapon from his automobile at LaPorte, killing him. Moreover, there was overwhelming evidence that defendant had threatened LaPorte on numerous occasions shortly before the killing. Comparing this untainted evidence with the above proper jury instruction, we conclude, beyond a reasonable doubt, that the jury would still have found that defendant killed LaPorte with prior calculation and design. Thus, as respects defendant's opportunity to negate this element of aggravated murder, and thus obtain a conviction for the lesser-included offense of murder, the trial court's alleged error in admitting the allegedly tainted evidence was harmless beyond a reasonable doubt.

Next, we consider whether the admission of the allegedly tainted evidence prejudiced defendant's opportunity to obtain

a conviction for voluntary manslaughter. If the jury had convicted defendant for the lesser-included offense of voluntary manslaughter instead of for aggravated murder, it would have been required to find that defendant killed LaPorte "knowingly"[5] (and not "purposely"[6] as is the case for aggravated murder), while under extreme emotional stress brought on by the requisite provocation. In short, the jury would have been required to find, which it did not, that the existence of the above mitigating circumstance negated a finding of a purposeful murder.

The admission of the allegedly tainted evidence, therefore, could not have prejudiced defendant's opportunity to obtain a conviction for voluntary manslaughter if, absent this evidence, it is beyond a reasonable doubt that the jury would still have found that defendant did not kill LaPorte while under extreme emotional stress brought on by the requisite provocation.

First, we do not decide this issue because, as set forth in part I, *supra,* defendant was not entitled to a jury instruction on voluntary manslaughter. Moreover, even if defendant was entitled to an instruction on voluntary manslaughter, we would still conclude that the admission of the allegedly tainted evidence was harmless beyond a reasonable doubt. To the extent, if at all, that the drafting of a last will and testament and the firearms purchase evidenced defendant's emotional stress in the weeks prior to the killing,[7] they were merely cumulative and corroborative of an overwhelming amount of untainted record evidence. See *Harrington* v. *California* (1969), 395

---

[5] R. C. 2901.22(B) provides:

"A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."

[6] R. C. 2901.22(A) provides:

"A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature."

[7] *State* v. *Muscatello* (1978), 55 Ohio St. 2d 201, 205, fn. 6, provides that "***evidence of the past relationship of a defendant and his victim [can]***be relevant to the issue of whether the homicidal act was performed while the perpetrator was, at the time of the killing, in a provoked fit of rage or hot blood."

U. S. 250. See, also, *United States* v. *Ramseur* (C.A. 6, 1967), 378 F. 2d 902; *United States* v. *Alloway* (C.A. 6, 1968), 397 F. 2d 105; *Pasterchik* v. *United States* (C.A. 9, 1968), 400 F. 2d 696, certiorari denied 395 U. S. 982; *Erving* v. *Sigler* (C.A. 8, 1969), 413 F. 2d 593, certiorari denied 397 U. S. 947; *United States* v. *Anderson* (C.A. 5, 1974), 500 F. 2d 1311.[8]

### III.

In his second proposition of law, defendant-appellant argues that the trial court's restrictions on his cross-examination of his wife violated his right to confront witnesses against him guaranteed by the Sixth Amendment to the United States Constitution, and that this violation was prejudicial.

The Court of Appeals agreed with defendant that the trial court erred in restricting his cross-examination of his wife, but nevertheless affirmed because it ruled that such error was harmless beyond a reasonable doubt. We sustain the ruling of the Court of Appeals.

Defendant's wife was called as a witness by the state. On direct examination, defendant's wife testified to a number of threats that defendant made against LaPorte during the months prior to the killing. On cross-examination, defendant attempted to explore the relationship between defendant's wife and LaPorte for two purposes: (1) to discredit her direct testimony by highlighting the possibility of her bias against defendant; and (2) to establish evidence relevant to the defense of insanity and to the mitigating circumstance of extreme emotional stress, *i.e.,* voluntary manslaughter.

The record reveals that the trial court sustained several of the state's objections to defendant's questions which were intended to explore the specific details of defendant's wife's sexual relationship with LaPorte, and to ascertain the number of times they had been together in defendant's presence.

Assuming that these restrictions were in violation of defendant's right of confrontation, see *Smith* v. *Illinois* (1968), 390 U. S. 129; *Davis* v. *Alaska* (1974), 415 U. S. 308, we never-

---

[8] We also find, beyond a reasonable doubt, that allegedly tainted evidence did not, in any way, prejudice defendant's opportunity to obtain a verdict of not guilty by reason of insanity.

theless find them to be harmless beyond a reasonable doubt.

First, defendant's wife's direct testimony that defendant had threatened LaPorte a number of times in the weeks prior to the killing was merely cumulative and corroborative of defendant's own admissions and the testimony of four other state's witnesses. Secondly, defendant's wife's testimony concerning her relationship with LaPorte, which was relevant on the issue of her bias, was also merely cumulative and corroborative of an overwhelming amount of other evidence which clearly established the nature and extent of this relationship. Thirdly, since the record contained an overwhelming amount of evidence concerning defendant's emotional stress, defendant's wife's testimony, as circumstantial evidence of this stress, was also merely cumulative or corroborative. Finally, we find absolutely no basis for the argument that the above restrictions prejudiced defendant's opportunity to obtain a finding of not guilty by reason of insanity. In sum, we hold that the trial court's alleged errors in restricting defendant's cross-examination of his wife were harmless beyond a reasonable doubt.

For the foregoing reasons, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

CELEBREZZE, C. J., W. BROWN, P. BROWN, SWEENEY, LOCHER, HOLMES and STILLMAN, JJ., concur.

STILLMAN, J., of the Eighth Appellate District, sitting for DOWD, J.