This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant, Charles McKinney, appeals his conviction in the Wayne County Court of Common Pleas. We reverse and remand.
In June of 1999, Eugene Mills resided in the City of Orrville, County of Wayne, State of Ohio. From his home, Mr. Mills, who is in a wheelchair, ran a general merchandise business. He kept the revenue from his business in a cash box, which he kept on a computer shelf next to his desk in the living room. Mr. Mills' other main source of income was his disability social security. He kept the proceeds from the disability checks and other money in a drawer near his bed, which was in the living room. Mr. Mills related that he had a good relationship with his nephew, Mr. McKinney, and that his nephew occasionally used the weight room in his home.
On June 7, 1999, Mr. McKinney visited Mr. Mills twice that day. At approximately 5:00 p.m., Mr. Mills and about seven or eight other individuals left in a van to go to a wrestling match in Cleveland. Mr. Mills testified that, although Mr. McKinney had been at his residence shortly before he departed for the wrestling match, no one was in his residence when he left and that no one had permission to be there while he was away. When Mr. Mills returned at approximately 12:00 to 1:00 a.m., he noticed that his cash box was missing. He then looked in the drawer near his bed and discovered that all of his money was gone. Mr. Mills related that he had $100 in the cash box and $500 in the drawer.
Mr. Mills immediately called the police. Officer Warren A. Caskey of the City of Orrville Police Department was dispatched to investigate the possible burglary. While surveying the outside of the house, Officer Caskey noticed that the weight room window was slightly ajar and its screen was torn. Officer Caskey testified that, upon closer inspection, it appeared that something had gone across the window ledge because there were marks consistent with that activity left on the dusty window sill. Accordingly, Officer Caskey dusted the window area for fingerprints and was able to lift a couple of partial prints. Despite the fact that identifications can be made from partial prints, Officer Caskey did not send these prints to be analyzed. Officer Caskey did not dust for fingerprints anywhere else inside or outside the residence. According to the officer, all other points of entry into the house were closed. Mr. Mills testified that he usually keeps all windows to his house locked. Additionally, he admitted to informing the police that he suspected the perpetrator to be his nephew, Mr. McKinney.
On June 8, 1999, Mr. Mills' brother discovered the cash box lying on the floor behind the furnace. Neither Mr. Mills nor his brother touched the box; instead, they immediately summoned the police. Officer Michael Bishop, who was wearing gloves, removed the box. He lifted several prints from the top and sides of the box. Officer Bishop noted that the box had been pried open from the front and side with some type of tool. The latent prints from the box were sent for analysis.
Charles Kenley, a latent print examiner for the Ohio Bureau of Criminal Identification and Investigation, compared the latent prints from the cash box to Mr. McKinney's prints. According to Mr. Kenley, several of the latent prints matched Mr. McKinney's, while other latent prints analyzed belonged to someone else. Mr. Mills testified that, while his brother and several other individuals had previously handed him the cash box, Mr. McKinney had never handled the cash box. Mr. Mills also related that no one had permission to take or borrow the money in question.
On July 14, 1999, Officer Caskey interviewed Mr. McKinney and asked whether Mr. McKinney's fingerprints would be found inside Mr. Mills' home. Officer Caskey testified that, in response, Mr. McKinney stated that his fingerprints would be in the weight room and on the table where the drawer was located but not on the cash box. Officer Caskey stated at trial that he never specifically asked Mr. McKinney whether his fingerprints would be on the cash box; rather, that information was volunteered by Mr. McKinney.
Additionally, on direct examination, Mr. Mills admitted to having been convicted of petty theft in 1992. On cross-examination, defense counsel attempted to elicit further information about the underlying facts of the petty theft conviction but was prevented from doing so by the trial court. Further, during cross-examination, Mr. Mills admitted that several people had been in the weight room shortly before the incident and that a couple caregivers had regular access to his home. He also conceded that Mr. McKinney was at his residence on a "somewhat" regular basis but refused to concede that it was even possible that Mr. McKinney could have handled the cash box while Mr. Mills was at home.
The defense presented the testimony of, inter alia, Angela Briggs-Woodhull, Crystal Niehaus, and Herbert Niehaus. Ms. Briggs-Woodhull, a close friend of Mr. McKinney, testified that, on June 7, 1999, Mr. McKinney brought his girlfriend's two children, whom he was babysitting, to her house to watch the wrestling match on her television. She stated that Mr. McKinney arrived between 5:00 and 5:30 p.m. According to Ms. Briggs-Woodhull, she could account for Mr. McKinney's whereabouts until approximately 11:00 p.m., after which time she did not see him.
Ms. Niehaus, Mr. McKinney's girlfriend, testified that, on June 7, 1999, Mr. McKinney was babysitting her two children while she was at work. According to Ms. McKinney, she left for work at approximately 5:00 p.m. and returned at 11:00 p.m. She further related that, when she returned home, she and Mr. McKinney went to bed. On cross-examination, however, Ms. Niehaus admitted to not telling the police this information until June 8, 2000. Additionally, the prosecutor presented Ms. Niehaus' June 7, 1999 time sheet, which indicated that Ms. Niehaus only worked for four hours that night; therefore, she presumably would have finished work at 9:00 p.m. Ms. Niehaus then acknowledged that she was unsure exactly when she was driven home that night but maintained that to her best recollection it was 11:00 p.m. She added that 11:00 p.m. was the usual time for her to return home from work. Mr. Niehaus, Ms. Niehaus' father and coworker, generally drove his daughter to and from work and testified that it would not be unusual for his daughter to have to wait for a ride.
On January 20, 2000, the Wayne County Grand Jury indicted Mr. McKinney for burglary, in violation of R.C. 2911.12(A)(3), and theft, in violation of R.C. 2913.02(A). Prior to trial, on August 18, 2000, Mr. McKinney filed a memorandum with the trial court, expressing his intention to cross-examine Mr. Mills about a false police report that Mr. Mills had previously filed against Mr. McKinney in 1991. Mr. McKinney also sought to cross-examine Mr. Mills about his conviction for petty theft, which apparently resulted from a plea bargain of the initial charge relating to Mr. Mills' conduct of making a false report to the police. A jury trial was held on August 21, 2000. In a verdict journalized on August 22, 2000, the jury found Mr. McKinney guilty on both counts in the indictment. He was sentenced accordingly. This appeal followed.
Mr. McKinney asserts a single assignment of error for review:[1]
 "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY FAILING TO PERMIT MR. McKINNEY TO CROSS-EXAMINE THE COMPLAINING WITNESS ABOUT THE WITNESS' PRIOR FALSE THEFT ALLEGATION AGAINST MR. McKINNEY."
Mr. McKinney avers that the trial court abused its discretion by refusing to permit him to present evidence and cross-examine Mr. Mills, the alleged victim, about a false allegation of theft that Mr. Mills had previously made against Mr. McKinney and which resulted in Mr. Mills' plea-bargained conviction for petty theft. Mr. McKinney argues that such restrictions were contrary to, inter alia, Evid.R. 404(B) and 608(B). We agree.
"The admission or exclusion of relevant evidence rests within the sound discretion of the trial court." State v. Sage (1987), 31 Ohio St.3d 173, paragraph two of the syllabus. Similarly, although a defendant has the right to cross-examine a witness, including the right to impeach a witness' credibility, the "extent of cross-examination with respect to an appropriate subject of inquiry is within the sound discretion of the trial court." State v. Green (1993), 66 Ohio St.3d 141, 147, certiorari denied (1993), 510 U.S. 891, 126 L.Ed.2d 203, quoting Alford v. United States
(1931), 282 U.S. 687, 694, 75 L.Ed. 624; see, also, Evid.R. 611. Accordingly, this court will not reverse a trial court's determination on such matters absent an abuse of discretion. An abuse of discretion connotes an unreasonable, arbitrary, or unconscionable attitude. Statev. Keenan (1998), 81 Ohio St.3d 133, 137.
Evid.R. 404(B) governs the admission of other crimes, wrongs, or acts evidence, providing:
 "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
Depending on the circumstances of the case, other acts evidence under Evid.R. 404(B) may be admissible to demonstrate that the victim had a motive to falsely accuse or implicate the defendant. See State v. Saban
(Mar. 18, 1999), 8th Dist. No. 73647; State v. Albrecht (May 22, 1986), 10th Dist. No. 85AP-949. In the alternative, evidence of prior convictions or other acts showing a witness' motive to lie may be presented as impeachment evidence under Evid.R. 607, 608, or 609. Statev. Lumpkin (Feb. 25, 1992), 10th Dist. No. 91AP-567.
Mr. McKinney has raised the applicability of Evid.R. 608(B). Evid.R. 608(B) permits a witness to be cross-examined about specific instances of a witness's conduct "if clearly probative of truthfulness or untruthfulness." See, also, State v. Brooks (1996), 75 Ohio St.3d 148,151. Evid.R. 608(B) provides, in part:
Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than conviction of crime as provided in Evid.R. 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if clearly probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness concerning the witness's character for truthfulness[.]
In the present case, although the trial court permitted Mr. Mills to testify regarding Mr. Mills' conviction for petty theft, such testimony was limited to the identity of the crime, the date of its occurrence, and the sentence imposed. The trial court did not allow Mr. McKinney to inquire on cross-examination or present evidence as to the underlying facts of the petty theft conviction, namely Mr. Mills' prior false allegations of theft against Mr. McKinney. From this information, the jury could have made an inference that Mr. Mills had some motive to, or under certain circumstances would, falsely accuse Mr. McKinney of theft. See Evid.R. 404(B). Moreover, the fact that Mr. Mills previously falsely accused Mr. McKinney of theft and filed a false police report to that effect undoubtedly qualifies as a specific instance of conduct that is clearly probative of Mr. Mills' truthfulness or untruthfulness. See Evid.R. 608(B). Consequently, we are compelled to conclude that the trial court abused its discretion in limiting Mr. McKinney's inquiry into this instance of Mr. Mills' conduct. Furthermore, after a careful review of the record, we cannot conclude that such error was harmless beyond a reasonable doubt. See State v. Pierce (1980), 64 Ohio St.2d 281, 289-90
(applying the harmless beyond a reasonable doubt standard to a violation of the defendant's right of confrontation).
Mr. McKinney's assignment of error is sustained. The judgment of the Wayne County Court of Common Pleas is reversed, and the cause is remanded for further proceedings consistent with this decision.
BAIRD, P.J., WHITMORE, J. CONCUR.
[1] We note that the state did not file an appellee's brief in the above captioned case and, therefore, has elected not to refute any of Mr. McKinney's assertions. See App.R. 18(C).