OPINION
{¶ 1} This case arises from a judgment by the Allen County Court of Common Pleas, finding the defendant/appellant, Tierre Manley, guilty of Murder, a violation of R.C. 2903.02(A), with a firearm specification. The appellant received an indefinite sentence of fifteen years to life on the Murder conviction and a three year sentence for the firearm specification, to be served consecutively. We hereby affirm the judgment of the trial court.
 {¶ 2} In the early morning hours of June 2, 2001, the appellant shot Stephen Glover several times. On June 3, 2001, Mr. Glover died as a result of the injuries he sustained from that incident. The shooting was apparently the result of a conflict that arose between Mr. Glover and the appellant on the night of June 1, 2001 while the two were playing pool at a local bar, Club Utopia. According to the appellant, he and Mr. Grover made a thirty dollar bet on a round of pool but, when he lost, Mr. Glover paid the appellant only twenty dollars. At that point, an altercation ensued between the parties, which began inside the bar and continued outside. According to defense witnesses, after the initial scuffle inside the establishment, the victim and several of his friends waited outside and attacked the appellant as he left the bar.
 {¶ 3} The parties then proceeded to a birthday party at the Fraternal Order of Police Hall, where yet another fight broke out between them. Although there is conflicting testimony as to who started that altercation, several witnesses, including the defendant, alleged that the victim caught the defendant off guard, hitting him in the face with a beer bottle. Eventually, due to another fight at the same location, the police arrived on the scene and sent the party-goers home. According to the appellant, his cousin drove him to the appellant's mother's house so that he could nurse the injuries he received during the fights.
 {¶ 4} The appellant claims that he decided to go from his mother's house to his girlfriend's house, and that his cousin set out to drive him there. On the way, the two passed by the intersection of Elm Street and Nye Street, near which Mr. Glover and his friends were congregated. By the defense's version of events, the appellant and his cousin stopped their vehicle because someone called out the appellant's name. Thereafter, both the appellant and his cousin exited the vehicle and the appellant talked to Mr. Glover. At this point, another fight commenced. At trial, Mr. Manley claimed that Mr. Glover pulled a gun during the fight and that, simultaneously, a third person, George Elliot, began shooting. The appellant claims that he wrestled the gun from Mr. Glover and began to fire, then tossed the gun into the street and fled in his vehicle.
 {¶ 5} Witnesses for the state, on the other hand, testified that the appellant and his cousin pulled up to the corner of Elm and Nye and remained in their vehicle. Mr. Glover proceeded to the passenger side of the vehicle and spoke to the appellant, apparently in an effort to end the dispute. While still seated in the vehicle, the appellant produced a gun and shot Mr. Glover first in the head and then fired three or four additional shots at the victim as he lay in the street. The victim was taken by friends to St. Rita's Medical Center, where he died the next day.
 {¶ 6} The appellant was indicted on one count of aggravated murder and one count of murder, both with firearm specifications. The murder charge was dismissed prior to trial. Beginning on October 29, 2001, the appellant was tried before a jury on the aggravated murder charge. On November 1, 2001, the jury found the appellant guilty of the lesser included offense of murder. The appellant brings the instant appeal from his conviction and sentence, asserting three assignments of error for our review.
 ASSIGNMENT OF ERROR NO. I {¶ 7} "The trial court erred by refusing to instruct the jury on voluntary manslaughter."
 {¶ 8} The appellant argues that the trial court erred in failing to instruct the jury on voluntary manslaughter, which is an inferior degree offense to aggravated murder. We disagree.
 {¶ 9} When reviewing an assignment of error based on jury instructions, an appellate court must determine whether the trial court's refusal to give a defendant's requested instruction constituted an abuse of discretion under the facts and circumstances of the case.[1] The term abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.[2]
 {¶ 10} As the appellant correctly points out, voluntary manslaughter is an inferior degree offense to aggravated murder, meaning that it "permits a defendant to mitigate a charge of aggravated murder or murder to manslaughter if the defendant establishes the mitigating circumstances of sudden passion or a sudden fit of rage in response to serious provocation by the victim sufficient to incite the defendant to use deadly force."[3] Thus, a defendant is entitled to a jury instruction on voluntary manslaughter where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the inferior degree offense.[4]
 {¶ 11} In order to determine whether there is evidence of reasonably sufficient provocation so as to warrant a jury instruction on voluntary manslaughter, we apply a two-pronged test.[5] First, we decide on an objective basis whether the alleged provocation is sufficient to evoke sudden passion or a fit of rage in any ordinary person.[6] If the objective test is met, then we determine by a subjective standard whether the defendant in the instant case acted under the influence of sudden passion or a fit of rage.[7]
 {¶ 12} In order to determine whether the provocation in the instant case amounted to "reasonably sufficient" provocation, we turn to examples from case law. In State v. Huertas, the Supreme Court of Ohio held that a defendant charged with aggravated murder is not entitled to an instruction on voluntary manslaughter where there is sufficient time to cool down between the alleged provocation and the killing.[8] InHuertas, the defendant called his estranged ex-girlfriend after a night of drinking and drug use, only to be told that another man was spending the night at her home. Less than an hour later, the defendant appeared inside the woman's home and stabbed her new lover to death.
 {¶ 13} The evidence presented in the instant case reveals that the parties had at least two physical altercations during the course of the evening of June 1, 2001; first at the Club Utopia and later at the FOP Hall. The appellant testified that he was "not happy with him [the victim]. I was mad as hell at him as a matter of fact," when he arrived at the corner of Elm and Nye. Nevertheless, the undisputed evidence shows that between an hour and one half hour passed from the time of the altercation at the FOP and the time when the appellant shot the victim. This is a similar time frame to that in Huertas. Consequently, even if we believe that the fights at the Club Utopia and the FOP constituted "sufficient provocation," we find that the appellant had adequate time to cool down between those events and the shooting.
 {¶ 14} Accordingly, the appellant's first assignment of error is not well-taken and is hereby overrruled.
 ASSIGNMENT OF ERROR NO. II {¶ 15} "The trial court erred by permitting introduction of evidence of specific details of Appellant's prior convictions in violation of Ohio Rules of Evidence 609 and 404, denying his right to due process and a fair trial."
 {¶ 16} The appellant argues that the trial court erroneously allowed testimony regarding specific details of his prior convictions in contravention of Evid.R. 404(B) and Evid.R. 609. Based on the following, we find the appellant's argument meritless.
 {¶ 17} Evid.R. 404(B) prohibits the introduction of a defendant's other crimes, acts, or wrongs for the purpose of proving his or her character or to show that he or she acted in conformity therewith. However, the rule provides that such evidence may be admitted to show "proof of motive, opportunity, intent, preparation, plan, knowledge, or absence of mistake or accident."[9] Evid.R. 609 permits the introduction of evidence regarding a defendant's prior felony record of convictions, provided the trial court determines that its probative value outweighs the danger of unfair prejudice, confusion of the issues, or misleading the jury.
 {¶ 18} It is clear from the Ohio Rules of Evidence that testimony regarding prior convictions of an accused is highly prejudicial and inadmissible under most circumstances. However, in the instant case, the defense initially elicited the testimony regarding the appellant's prior convictions, and thus "opened the door" to this evidence. Accordingly, any objection to such evidence was effectively waived.[10]
Furthermore, when the defense objected to the state's cross-examination regarding the appellant's prior conviction, the trial court stated the evidence would be admitted "for the limited purpose of showing absence of mistake or motive[.]" Thus, a proper limiting instruction was given, as the defendant claimed that he shot the victim by accident while attempting to protect himself. We find that the evidence regarding the appellant's prior conviction did not run afoul of Evid.R. 404(B) or Evid.R. 609.
 {¶ 19} Accordingly, the appellant's second assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. III {¶ 20} "The appellant was denied effective assistance of counsel."
 {¶ 21} For his final assignment of error, the appellant claims that he was denied effective assistance of counsel. We disagree.
 {¶ 22} To prevail on a claim of ineffective assistance of counsel, a defendant must show that his counsel's performance was deficient and that the deficient performance prejudiced his defense.[11]
In asserting his ineffective assistance of counsel claim, the appellant must overcome the presumption that a licensed attorney is competent and that his decisions constitute sound trial strategy.[12] We note also that an appellate court reviewing an ineffective assistance of counsel claim will not second-guess counsel's strategy in direct and cross-examination of witnesses.[13] Furthermore, debatable tactical decisions generally do not constitute a deprivation of effective counsel.[14]
 {¶ 23} The appellant's trial counsel called Detective Paul Guidera to the stand as a defense witness. Detective Guidera assisted in the investigation against the appellant. Yet, the Detective was not treated as a hostile witness. The bulk of Detective Guidera's testimony centered around the investigation upon which he based his affidavit in support of a search warrant. In the course of his testimony, Detective Guidera reiterated the testimony of several eyewitnesses for the state. In addition, he discussed the police statements of three individuals who did not testify at trial but whose versions tended to corroborate testimony of state witnesses. Also, on cross-examination, the state elicited testimony from the detective that all of the statements given to him were consistent and supported the state's version of events.
 {¶ 24} Although some of the testimony provided by Detective Guidera certainly did nothing to strengthen the appellant's case, most of it had already been provided by other witnesses. Thus, we do not find that it prejudiced his defense. Also, the appellant's counsel did bring out testimony that supported the appellant's version of who was at the crime scene. Much of the direct examination sought to challenge the credibility of a state's witness who changed his story to police. As such, we find that the decision of the appellant's counsel to put Detective Guidera on the stand constituted a debatable tactical decision, which we decline to second-guess.
 {¶ 25} The appellant also argues that his trial counsel was ineffective because he failed to object to the introduction of evidence regarding the appellant's former convictions. The defense initially brought out this information on direct examination, after which the door was opened to cross-examination regarding the testimony. As the state points out, such a decision to bring past convictions to light on direct examination in order to "take the sting out" of said evidence is a fairly common trial tactic and, as such, does not constitute defective assistance of counsel in this instance.
 {¶ 26} Accordingly, the appellant's final assignment of error is not-well taken and is hereby denied.
 {¶ 27} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment affirmed.
 BRYANT and WALTERS, JJ., concur.
[1] State v. Wolons (1989), 44 Ohio St.3d 64, 68.
[2] Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
[3] State v. Benge (1996), 75 Ohio St.3d 136, 140, citing State v.Rhodes (1992), 63 Ohio St.3d 613, syllabus. See also R.C. 2903.03(A).
[4] State v. Thomas (1992), 40 Ohio St.3d 213, paragraph two of the syllabus.
[5] State v. Shane (1992), 63 Ohio St.3d 630.
[6] Id. at 634.
[7] Id.
[8] State v. Huertas (1990), 51 Ohio St.3d 22, 32. See, also,State v. Pierce (1980), 64 Ohio St.2d 281.
[9] Evid.R. 404(B).
[10] State v. Hartford (1984), 21 Ohio App.3d 29, 30-31.
[11] State v. Clemons (1998), 82 Ohio St.3d 438, 449-50, citingStrickland v. Washington (1984), 466 U.S. 668, 687.
[12] Strickland, 466 U.S. at 689-90.
[13] State v. Gray (Mar. 28, 2000), Franklin App. No. 99AP-666, citingState v. Edwards (Feb. 17, 1998), Clermont App. No. CA97-04-035.
[14] See Id. at 689.