COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|                        |   | JUDGES:                      |
|------------------------|---|------------------------------|
| STATE OF OHIO          | : | Hon. W. Scott Gwin, P.J.     |
|                        | : | Hon. John W. Wise, J.        |
| Plaintiff-Appellee     | : | Hon. Julie A.  Edwards, J.   |
|                        | : |                              |
| -vs-                   | : |                              |
|                        | : | Case No. 2011-CA-00074       |
| STEPHEN J. RICHARDS    | : |                              |
|                        | : |                              |
| Defendant-Appellant    | : | O P I N I O N                |

CHARACTER OF PROCEEDING:     Criminal appeal from the Licking County
                             Court of Common Pleas, Case No.
                             2010CR360

JUDGMENT:                    Affirmed in part, vacated in part and
                             Remanded

DATE OF JUDGMENT ENTRY:      March 15, 2012

APPEARANCES:

For Plaintiff-Appellee                  For Defendant-Appellant

KENNETH OSWALT
Licking County Prosecutor               WILLIAM T. CRAMER
BY: TRACEY VAN WINKLE                   470 Olde Worthington Rd., Ste. 200
20 South Second St., 4th Fl.            Westerville, OH 43082
Newark, OH  43055

*Gwin, P.J.*

**{1}** Defendant-appellant Stephen Richards was accused of murdering his father, Chris Richards, and hiding the body in a burn pit in the backyard of his father's home. As a result, appellant was charged with felony-murder (R.C. 2903.02(B)) based on a predicate felony offense of felonious assault (R.C. 2903.11) and gross abuse of a corpse (R.C. 2927.01(B)).

**{2}** Chris' second wife, Tanya Richards testified that they owned the property at 49 and 45 Madison Avenue in Newark. In June 2010, her daughter Carrie Warner lived at 49 Madison with her children and her fiancé Carl Meade. Chris and Tanya visited the houses in Newark and the yard was out of control, so Chris went back on Wednesday, June 23, to start cleaning up the yard.

**{3}** On Friday, Carrie awoke around 7:00 or 8:00 a.m. and found Carl playing a video game, Chris asleep on the couch, and Stephen asleep on the floor. Carl had a broken jaw from an unrelated incident and was taking medication and not sleeping well, so he was up all night.

**{4}** When dinner was ready Friday night, Carrie looked around for Chris, but could not find him. The last time Tanya spoke with Chris was by cellular telephone that day around 1:30 p.m. Tanya did not hear from Chris on Saturday. She tried to call him a couple times, but could not reach him. Later on Saturday, she called Carrie to see if she had seen Chris. Tanya came to Newark on Saturday. Sunday she called the police to report a missing person.

**{5}** Detectives became involved about six days after Chris went missing. Detectives went to the 49 Madison location and spoke with the residents. They

searched the property and immediately noticed the smell of a dead animal when they walked through the backyard. They eventually located the source of the smell in the burn pit.

{6}     In the burn pit, they found Chris's body wrapped in a blue tarp that was tied up with plastic clothesline and some braided rope. He was lying face down, covered with debris. Several pieces of brick were found wrapped in the tarp with the body. There was a bottle of Tylenol with codeine in a pocket and the bottle indicated that it was a prescription for Chris.

{7}     The autopsy revealed blunt force trauma to the skull in a shape that was consistent with the bricks found at the scene. There were also two cutting injuries to the victim's neck. One cut ran diagonally to the front of the neck and was relatively superficial. A deeper cut injury occurred on the left side and back of the decedent's neck. The victim was alive when the injuries to the neck were inflicted. According to the coroner, the blow to the head would have been fatal and probably occurred while the victim's head was stationary, either lying on the ground or against a hard object like a fence.

{8}     In his first interview with the police, appellant confessed that his father came after him with a knife and he had to punch him and hit him. Appellant said that his father wanted him to buy some pain pills, but he would not. They were also arguing about some past things, but appellant did not elaborate. Appellant said he was using a knife to cut some weeds and he set it down on the jungle gym. The decedent picked up the knife and came at him. Appellant said that afterwards he panicked, and wrapped the body up in a tarp and put it into the fire pit.

**{9}** After the autopsy, the detectives re-interviewed appellant. Appellant indicated that he believed that the decedent would have taken appellant's life and that really hurt him. Appellant recalled that the decedent came at him with the knife up in the air. Appellant was cut when he blocked the knife. He thought that he put the decedent in a chokehold. They struggled a bit more, then the decedent took appellant to the ground Appellant told the police that he felt like his life was at risk. After a few minutes, appellant said he did not want to talk about it anymore, but they could check back with him in a few days.

**{10}** At trial, appellant argued that he was acting under a sudden passion or in a sudden fit of rage brought on by serious provocation. As a result, the court instructed the jury on the lesser offense of involuntary manslaughter (R.C. 2903.04(A)) based on a predicate felony offense of aggravated assault (RC. 2903.12).

**{11}** The jury rejected the lesser offense and found appellant guilty as charged. Appellant was sentenced to 15 years to life for murder and a consecutive one-year term for abuse of a corpse, for a total of 16 years to life.

**{12}** Appellant raises four Assignments of Error,

**{13}** "I. THE TRIAL COURT VIOLATED APPELLANT'S RIGHTS TO DUE PROCESS UNDER THE FOURTEENTH AMENDMENT AND SECTION 16, ARTICLE I, OF THE OHIO CONSTITUTION BY EXCLUDING EVIDENCE OF THE VICTIM'S VIOLENT CHARACTER.

**{14}** "II. THE TRIAL COURT VIOLATED APPELLANT'S RIGHTS TO DUE PROCESS UNDER THE FOURTEENTH AMENDMENT AND SECTION 16, ARTICLE I,

OF THE OHIO CONSTITUTION BY EXCLUDING EVIDENCE OF THE VICTIM'S DRUG USE.

**{15}** "III. THE CUMULATIVE EFFECT OF THE FOREGOING ERRORS DEPRIVED APPELLANT OF HIS RIGHTS TO DUE PROCESS AND A FAIR TRIAL UNDER THE FOURTEENTH AMENDMENT AND SECTION 16, ARTICLE I, OF THE OHIO CONSTITUTION.

**{16}** "IV. THE TRIAL COURT VIOLATED R.C. 2967.28 BY IMPOSING THREE YEARS OF POST-RELEASE CONTROL AT SENTENCING ON COUNT TWO."

I.

**{17}** In his first assignment of error, appellant maintains that the trial court committed error in refusing to permit him to admit certain forms of character evidence associated with the victim, ostensibly to show that the victim was the first aggressor and the appellant's state of mind.

**{18}** Appellant's argument concerns two witnesses: Tanya Richards, the victim's widow and appellant's stepmother, who testified as a fact-witness for the prosecution; and Carolyn Wilson, the appellant's maternal grandmother, who did not testify, but whose testimony was proffered by the defense.

**{19}** As part of its case in chief, the prosecution presented the testimony of Tanya Richards. Mrs. Richards testified as a fact witness. Appellant agrees that at no time did the prosecution seek to present her as a character witness for any purpose. However, on cross-examination appellant's defense counsel sought to question her regarding her opinion with respect to her deceased husband's character trait for peacefulness. The trial court decided that in the absence of some evidence that

appellant had been provoked, or that appellant was acting in self-defense, that the admission of character evidence was premature and this line of questioning was aborted.

{20} The state subsequently admitted appellant's statements to the police in which appellant claimed the decedent became angry and that appellant believed that the decedent would have taken his life and that really hurt him. Appellant argues that he should have been allowed to recall Tanya to the witness stand to ask her about the decedent's violent character. Specifically, after the prosecution rested, defense counsel proffered the testimony of Tanya Richards concerning the victim's character.

{21} Tanya testified that she and Chris had been married since 1997. Tanya testified that Chris "was a person like anyone else. He had his ups and downs." When pressed further, Tanya indicated that Chris "was not a violent person normally," "[he] threw fits like anyone else," "But overall he was pretty easy going." At this point appellant claims that he should be permitted to impeach Tanya with specific instances of the decedent's violent character. In particular, the fact that in 2007 Tanya filed domestic violence charges against the decedent and obtained a civil protection order.

{22} Evid. R. 405 governs the permissible methods for proving character:

**(A) Reputation or opinion**

In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct.

**(B) Specific instances of conduct**

In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of his conduct.

{23} Appellant's reliance on Evid. R. 405(B) is mistaken. While appellant argues this evidence was relevant to show his state of mind and therefore relevant to his claim of that he acted in a fit of rage or passion, specific instances of conduct are permitted only when the character trait of a person is an essential element of the claim or defense.

{24} The Ohio Supreme Court has held that a defendant asserting self-defense cannot introduce evidence of specific instances of a victim's conduct to prove that the victim was the initial aggressor. *State v. Barnes*, 94 Ohio St.3d 21, 2002-Ohio-68, 759 Ohio St.3d 1240(2002). The Eleventh District Court of Appeals has applied the reasoning in *Barnes* in the context of a voluntary manslaughter "defense," finding that the trial court did not err in limiting a defendant to reputation or opinion evidence. *State v. Handwork,* 11th Dist. No.2002–P–0134, 2004–Ohio–6181, ¶ 70–73; *State v. Snyder*, 5th Dist. No. 10AP060021, 2011-Ohio-3334.

{25} Further, past incidents or verbal threats do not satisfy the test for reasonably sufficient provocation when there is sufficient time for cooling off. *State v. Huertas*, 51 Ohio St.3d 22, 31-32, 553 N.E.2d 1058, 1068-1069 (1990). See, also, *State v. Pierce*, 64 Ohio St.2d 281, 18 O.O.3d 466, 414 N.E.2d 1038 (1980). In this case, there is no evidence that the past incidents involving domestic violence against Tanya or Tanya's obtaining a civil protection order against the decedent provoked appellant into a sudden passion or fit of rage. Fear alone is insufficient to demonstrate the kind of

emotional state necessary to constitute sudden passion or fit of rage. *State v. Mack,* 82 Ohio St.3d 198, 201, 1998-Ohio-375, 694 N.E.2d 1368.

**{26}** Appellant next contends that the trial court erred by excluding the testimony of his biological grandmother Carolyn Wilson. Ms. Wilson would have testified that she witnessed the decedent intoxicated, punching holes in walls and turning over furniture. The court reviewed a transcript of her deposition and noted that she admitted that she had not seen the decedent for approximately seventeen years. In fact, she had no knowledge of the relationship between appellant and his father since appellant became an adult, and had no contact with appellant for six to seven years prior to the case at bar. The trial court ruled on that basis her testimony was not relevant.

Ordinarily, a trial court is vested with broad discretion in determining the admissibility of evidence in any particular case, so long as such discretion is exercised in line with the rules of procedure and evidence. The admission of relevant evidence pursuant to Evid.R. 401 rests within the sound discretion of the trial court. E.g., *State v. Sage* (1987), 31 Ohio St.3d 173, 31 OBR 375, 510 N.E.2d 343, paragraph two of the syllabus. An appellate court which reviews the trial court's admission or exclusion of evidence must limit its review to whether the lower court abused its discretion. *State v. Finnerty* (1989), 45 Ohio St.3d 104, 107, 543 N.E.2d 1233, 1237. As this court has noted many times, the term 'abuse of discretion' connotes more than an error of law; it implies that the court acted unreasonably, arbitrarily or unconscionably. E.g.,

*Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482,

450 N.E.2d 1140, 1142.

*Rigby v. Lake County* (1991), 58 Ohio St.3d 269, 271, 569 N.E.2d 1056(1991).

**{27}** A reviewing court should be slow to interfere unless the court has clearly abused its discretion and a party has been materially prejudiced thereby. *State v. Maurer*, 15 Ohio St.3d 239, 264, 473 N.E.2d 768, 791(1984). The trial court must determine whether the probative value of the evidence and/or testimony is substantially outweighed by the danger of unfair prejudice, or of confusing or misleading the jury. See *State v. Lyles*, 42 Ohio St.3d 98, 537 N.E.2d 221(1989).

**{28}** Having reviewed the record that appellant cites in support of his claim that the error was prejudicial, we find appellant was not prejudiced by the trial court's exclusion because Carolyn Wilson's testimony was too remote to demonstrate the kind of emotional state necessary to constitute sudden passion or fit of rage.

**{29}** Appellant's First Assignment of Error is overruled.

II.

**{30}** In his Second Assignment of Error, appellant argues the trial court erred by excluding evidence of various prescription medications found in the victim's system at autopsy.

**{31}** Prior to trial, the prosecution filed a motion in limine seeking to exclude evidence of the decedent's drug use. The parties signed an agreed entry that provided that the evidence of drugs in the decedent's system was not relevant and therefore inadmissible, with the exception of ethanol and the active ingredients of Tylenol with

codeine. The entry permitted defense counsel to raise the issue again at trial if it became relevant.

{32}    At trial, the prosecution presented evidence that the decedent had a prescription for Tylenol with codeine, a bottle of pills was found in his pocket, and the decedent's liver contained the active ingredients of Tylenol with codeine in therapeutic levels and ethanol in an unknown quantity. Additionally, the coroner explained that decomposition produces ethanol, and may account for the ethanol that was found in the decedent's body.

{33}    Before the cross-examination of the coroner, the defense notified the court that it intended to ask about the other drugs that were found in the decedent's body. The prosecution countered that there was no evidence that made the other drugs relevant.

{34}    The court ruled that the other drugs were irrelevant and inadmissible, but the parties could review it again depending on the evidence.

{35}    Defense counsel subsequently proffered the toxicology report and the testimony of the coroner. The toxicology report showed that the decedent's body contained morphine, hydromorphine, hydrocodone, and buspirone. The coroner explained that the morphine and hydromorphine were byproducts of the Tylenol with codeine, while the hydrocodone was from a Vicodin prescription and the buspirone was from a prescription for an anti-depressant called Burspar.

{36}    After the proffer, defense counsel again argued that the evidence of other drugs was relevant. The prosecution countered that the defense wanted the jury to speculate about the effects of the drugs without any expert testimony to provide guidance. The defense contended that you do not need an expert to understand that

you do not mix alcohol and prescription drugs. The court sustained its prior ruling that the other drugs were not relevant.

**{37}** The prosecution subsequently admitted appellant's statements to the police where he indicated that the decedent attacked him because he was using pain pills and appellant refused to get him more. Defense counsel asked the court to revisit the issue of the other drugs in light of appellant's statements. The prosecution countered that the defense still lacked expert testimony to verify the effect of the drugs. The court denied the request to revisit the issue.

**{38}** On appeal, appellant first maintains that the decedent's use of multiple prescription painkillers greatly increases the likelihood that the decedent was looking for pills. In that regard, appellant notes that he had told the police that his father attacked him when he refused to get him more pain pills. Appellant further maintains that the combined drug and alcohol use was something that the jury should have been permitted to consider when determining whether the decedent provoked the assault.

Ordinarily, a trial court is vested with broad discretion in determining the admissibility of evidence in any particular case, so long as such discretion is exercised in line with the rules of procedure and evidence. The admission of relevant evidence pursuant to Evid.R. 401 rests within the sound discretion of the trial court. E.g., *State v. Sage* (1987), 31 Ohio St.3d 173, 31 OBR 375, 510 N.E.2d 343, paragraph two of the syllabus. An appellate court which reviews the trial court's admission or exclusion of evidence must limit its review to whether the lower court abused its discretion. *State v. Finnerty* (1989), 45 Ohio St.3d

104, 107, 543 N.E.2d 1233, 1237. As this court has noted many times, the term 'abuse of discretion' connotes more than an error of law; it implies that the court acted unreasonably, arbitrarily or unconscionably. E.g., *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482, 450 N.E.2d 1140, 1142.

*Rigby v. Lake County* (1991), 58 Ohio St.3d 269, 271, 569 N.E.2d 1056(1991).

{39} A reviewing court should be slow to interfere unless the court has clearly abused its discretion and a party has been materially prejudiced thereby. *State v. Maurer*, 15 Ohio St.3d 239, 264, 473 N.E.2d 768, 791(1984). The trial court must determine whether the probative value of the evidence and/or testimony is substantially outweighed by the danger of unfair prejudice, or of confusing or misleading the jury. See *State v. Lyles*, 42 Ohio St.3d 98, 537 N.E.2d 221(1989).

{40} Voluntary manslaughter requires that the killing was committed, "while under the influence of sudden passion or in a sudden fit of rage, * * * brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the [offender] into using deadly force * * *." R.C. 2903.03(A). Sudden rage or passion has been described as, "anger, hatred, jealousy, and/or furious resentment." *State v. Harris*, 129 Ohio App.3d 527, 535, 718 N.E.2d 488(10th Dist. 1998).

{41} To determine whether sufficient evidence of serious provocation exists, a trial court must engage in a two-part inquiry.

{42} First, the court must objectively determine whether the alleged provocation is reasonably sufficient to bring on a sudden passion or fit of rage. *Mack,* 82 Ohio St.3d at 201, 694 N.E.2d 1328. "If this objective standard is met, the inquiry shifts to a

subjective standard, to determine whether the defendant in the particular case 'actually was under the influence of sudden passion or in a sudden fit of rage.'" *Id.,* quoting *State v. Shane,* 63 Ohio St.3d 630, 634-35, 590 N.E.2d 724(1992).

**{43}** In examining whether provocation is reasonably sufficient to bring on a sudden fit of passion or fit of rage, the Ohio Supreme Court has stated "[f]or provocation to be reasonably sufficient, it must be sufficient to arouse the passions of an ordinary person beyond the power of his or her control." *State v. Shane*, 63 Ohio St.3d at 635, 590 N.E.2d 272. In determining whether the provocation was reasonably sufficient, the court must consider the emotional and mental state of the defendant and the conditions and circumstances that surrounded him at the time. *State v. Mabry*, 5 Ohio App.3d 13, 449 N.E.2d 16 (8th Dist. 1982), paragraph five of the syllabus, approved.

**{44}** Generally, neither words alone nor fear itself will constitute evidence of serious provocation. "[W]ords alone will not constitute reasonably sufficient provocation to incite the use of deadly force in most situations" and "[f]ear alone is insufficient to demonstrate the kind of emotional state necessary to constitute sudden passion or fit of rage." *Shane* at 634-635, 590 N.E.2d 272; *Mack* at 198, 694 N.E. 2d 1328.

**{45}** Based upon our review of the record, we find that there was insufficient evidence to warrant admitting evidence of the other substances in the decedent's body. Appellant has failed to establish a causal connection between any request by the decedent that appellant obtain drugs and how such a request was sufficient to arouse the passions of an ordinary person beyond the power of his or her control leading to the death of appellant's father. Unlike self-defense, the issue of who was the aggressor is not the determinative issue in a voluntary manslaughter defense; rather the appellant

must show that he acted under a sudden rage or passion. The evidence that other substances in the body of the decedent lead appellant to act simply consisted of unsupported speculation. Accordingly, that evidence may have lead to unfair prejudice, confusion of the issues, or misleading of the jury. Therefore any probative value of the evidence was overcome by the danger. See Evid.R. 403.

{46} In the case at bar, the trial court refused to admit this evidence "as they've been presented presently* * * On the basis of the record that's been presented here, I'll overrule your request." We cannot conclude that the trial court abused its discretion by doing so.

{47} Appellant's Second Assignment of Error is overruled.

III.

{48} In his Third Assignment of Error, appellant claims he was denied the right to a fair trial based on cumulative error. Specifically, appellant alleges that the errors outlined in his First and Second assignments of error amount to cumulative error requiring reversal.

{49} In *State v. Brown,* 100 Ohio St.3d 51, 2003-Ohio-5059, 796 N.E.2d 506, the Ohio Supreme Court recognized the doctrine of cumulative error. However, as explained in *State v. Bethel,* 110 Ohio St.3d 416, 2006-Ohio-4853, 854 N.E.2d 150, ¶ 197, it is simply not enough to intone the phrase "cumulative error." *State v. Sapp,* 105 Ohio St.3d 104, 2004-Ohio-7008, 822 N.E.2d 1239, ¶ 103.

{50} Here, appellant cites the doctrine of cumulative error, lists or incorporates the previous two assignments of error, and gives no analysis or explanation as to why

or how the errors have had a prejudicial cumulative effect. Thus, this assignment of error has no substance under *Bethel* and *Sapp.*

**{51}** Where we have found that the trial court did not err, cumulative error is simply inapplicable. *State v.* Carter, 5th Dist. No. 2002CA00125, 2003-Ohio-1313 at ¶ 37. To the extent that we have found that any claimed error of the trial court was harmless, or that claimed error did not rise to the level of plain error, we conclude that the cumulative effect of such claimed errors is also harmless because taken together, they did not materially affect the verdict. *State v. Leonard,* 104 Ohio St.3d 54, 89-90, 2004-Ohio-6235, 818 N.E.2d 229, 270 at ¶ 185.

**{52}** As this case does not involve multiple instances of error, appellant's Third Assignment of Error is overruled.

IV.

**{53}** In his final assignment of error appellant claims that his conviction on Gross Abuse of a Corpse, a felony of the fifth degree, wrongly imposes a term of three years of post-release control.

**{54}** R.C. 2967.28(C) provides that any sentence for a fifth-degree felony "shall include a requirement that the offender be subject to a period of post-release control of up to three years after the offender's release from imprisonment, if the parole board* * * determines that a period of post-release control is necessary for that offender." Under R.C. 2967.28(D), the parole board is required to review a prisoner's criminal history and the record of the prisoner's conduct while imprisoned before deciding whether to impose post-release control. Thus, appellant contends post-release control for fifth degree

felonies is left to the discretion of the parole board, which must wait to review the offender's conduct while in prison and need not impose a full three years of sanctions.

**{55}**    Rather than void, appellant's sentence with respect to post-release control is voidable, i.e. it is a judgment "rendered by a court that has both jurisdiction and authority to act, but in which the court's judgment is invalid, irregular, or erroneous." *State v. Simpkins,* 117 Ohio St.3d 420, 2008–Ohio–1197, 884 N.E.2d 568, ¶ 12, *superseded by statute on other grounds as stated in State v. Singleton,* 124 Ohio St.3d 173, 2009–Ohio–6434, 920 N.E.2d 958; *State v. McKenna*, 11th Dist. No. 2009-T-0034, 2009-Ohio-6154 at ¶84.

**{56}**    Accordingly, we vacate the judgment of the trial court insofar as it relates to the imposition of post-release control for the felony of the fifth degree Gross Abuse of a Corpse and remand this cause to the trial court to modify  appellant's sentence with respect to post release control for the felony of the fifth degree Gross Abuse of a Corpse so that appellant's sentence shall include a requirement that appellant be subject to a period of post-release control of up to three years after appellant's release from imprisonment, if the parole board, in accordance with division (D) of R.C. 2967.28 determines that a period of post-release control is necessary for appellant.

**{57}**    Appellant's Third Assignment of Error is sustained.

**{58}** For the foregoing reasons, the judgment of the Court of Common Pleas for Licking County, Ohio is affirmed in part and vacated in part. We vacate the judgment of the trial court insofar as it relates to the imposition of post release control for the felony of the fifth degree Gross Abuse of a Corspe and remand this case to the trial court to modify appellant's sentence with respect to post release control for the felony of the fifth degree Gross Abuse of a Corspe so that appellant's sentence shall include a requirement that appellant be subject to a period of post-release control of up to three years after appellant's release from imprisonment, if the parole board, in accordance with division (D) of R.C. 2967.28 determines that a period of post-release control is necessary for appellant.

By Gwin, P.J.,

Wise, J., and

Edwards, J., concur

_____
HON. W. SCOTT GWIN

_____
HON. JOHN W. WISE

_____
HON. JULIE A. EDWARDS

WSG:clw 0223

IN THE COURT OF APPEALS FOR LICKING COUNTY, OHIO

FIFTH APPELLATE DISTRICT

STATE OF OHIO                          :
                                       :
                Plaintiff-Appellee     :
                                       :
                                       :
-vs-                                   :        JUDGMENT ENTRY
                                       :
STEPHEN J. RICHARDS                    :
                                       :
                                       :
                Defendant-Appellant    :        CASE NO. 2011-CA-00074


        For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas for Licking County, Ohio is affirmed in part and vacated in part. We vacate the judgment of the trial court insofar as it relates to the imposition of post release control for the felony of the fifth degree Gross Abuse of a Corspe and remand this case to the trial court to modify appellant's sentence with respect to post release control for the felony of the fifth degree Gross Abuse of a Corspe so that appellant's sentence shall include a requirement that appellant be subject to a period of post-release control of up to three years after appellant's release from imprisonment, if the parole board, in accordance with division (D) of R.C. 2967.28 determines that a period of post-release control is necessary for appellant. Costs to appellant.


                                    _____
                                    HON. W. SCOTT GWIN

                                    _____
                                    HON. JOHN W. WISE

                                    _____
                                    HON. JULIE A. EDWARDS